UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
    Plaintiff,

v.

DARREL KING,
    Defendant.

Case No. 81-cr-00311-RS-1

**ORDER FOR RESPONSE**

In 1981, Defendant Darrel King[1] was convicted in the Superior Court of San Francisco of first-degree murder, use of a firearm, and possession of a firearm by a convicted felon under California Penal Code sections 187, 12022.5, and 12021. He was sentenced to twenty-seven years to life imprisonment. Following that conviction, King was tried and convicted in this court for several drug related offenses and again for possession of a firearm by a convicted felon. King contends the federal convictions all related to the same underlying course of conduct represented by the state convictions. In February of 1982, King received a federal sentence of 45 years imprisonment. The sentence included three 15-year sentences to each of Counts 1-3, to run consecutively for a total of 45 years; three additional 15-year sentences as to each of Counts 4-6,

---

[1] In his recent filings, King spells his first name as Darrell. In prior filings he has sometimes spelled it with one L and sometimes with two. The court will continue using the form that appears in the docket, intending no disrespect if the correct spelling differs.

to run concurrently; and one additional 45-year sentence as to Count 7, to run concurrently.[2]

2017 § 2255 petition

This matter was reopened and reassigned to the undersigned in 2017, when King, still in state custody at the time, filed a document entitled "§ 2255 Habeas Corpus Appeal." Dkt. No. 235. That document, filed *in pro per*, focused on alleged misconduct of former San Francisco police Inspector Napoleon Hendrix. The § 2255 petition was dismissed as time barred in July 2018. See Order Dismissing Def.'s § 2255 Mot., Dkt. No. 258 (finding King failed to account for the "six-year gap between when he learned about the factual basis for the [§ 2255] motion—i.e., the misconduct of Inspector Napoleon Hendrix—and when he actually filed the motion"). The alleged misconduct of Inspector Hendrix is no longer an issue in this matter.

Although the § 2255 petition primarily addressed claims relating to Inspector Hendrix, it also made passing reference to *United States v. Bell*, 46 F. 3d 442 (5th Cir. 1995), and a contention that it was legally improper for King's federal sentence not to have been running concurrently with his state sentence. Notably, the government's opposition to the petition failed to list that contention among those it acknowledged King was raising. *See* Dkt. No. 242, document p.1, line 25--p.2, line 7. Without analysis as to whether the claim might have arisen at a different time than those involving Inspector Hendrix, the court's dismissal order merely noted the same general timing deadlines would apply to the *United States v. Bell* argument. *See* Dkt. No. 258.

King moved for reconsideration of the dismissal, arguing primarily that he had additional evidence relevant to equitable tolling that he should be allowed to present. The reconsideration motion also again raised *United States v. Bell*, and argued that his claim regarding whether his federal sentence should have been running concurrently could not be time-barred, because it would not even have been *ripe* until he was taken into federal custody. Dkt. 259. The order

---

[2] Entries from 1982 and earlier do not appear in the court's current electronic docket. The government previously provided a copy of the judgment as exhibit A to Dkt. No. 242.

denying reconsideration did not expressly address the *United States v. Bell* issue, although it did advise King any further challenges to the ruling should be presented to the court of appeal. Dkt. No. 260. Both this court and the court of appeal subsequently declined to issue a certificate of appealability. Dkt. Nos. 263 and 267.

### 2019 request for stay of execution of sentence

In July of 2019, King filed a "request for stay of execution" of his federal sentence. King reported that the California Board of Parole Hearings had recently granted him parole, following 38 continuous years of imprisonment. At the time, the Ninth Circuit had yet to act on the certificate of appealability. King argued that this court had failed to address the *United States v. Bell* issue in any of its prior rulings, and that execution of his federal sentence should be postponed until the Ninth Circuit ruled on that point. The order denying the stay request construed it as another request for reconsideration, and denied it for the reasons given in the prior orders. Dkt. No. 266. The order denying the request also noted that jurisdiction to provide relief likely was lacking given the pending appeal.

### 2020 stay request and § 2255 petition

In March of 2020, represented by counsel, King again requested that his federal sentence by stayed until the issues he was raising were resolved. Invoking § 2255, King then once more argued his federal sentence should have been running concurrently to his state sentence, under the principles stated in *United States v. Bell.* King went on to argue various other claims relating to the alleged conduct of Inspector Hendrix. Dkt. 269. The filing was dismissed as a successive § 2255 motion, submitted without the requisite certificate from the court of appeal. Dkt. 270.

### 2020 Motion for compassionate release

In November of 2020, King filed a motion for compassionate release. Dkt. No. 272. The order denying the motion observed that King appeared to be "a strong candidate" for

compassionate release, but concluded he was statutorily precluded from bringing his own motion for compassionate release because he is an "old law" prisoner, whose crimes took place before the effective date of the statute that authorizes such motions. Dkt. No. 278.

The Ninth Circuit affirmed. *United States v. King*, 24 F.4th 1226 (9th Cir. 2022). The opinion rejected King's argument that reading the statutory language as compelling a distinction between "old law" and "new law" prisoners results in an absurdity. The court stated:

> Granting prisoners who committed their crimes on or after November 1, 1987, more access to compassionate release than prisoners who offended before this date is not an absurdity requiring disregard of a clear statutory scheme . . . . There is a rational reason for this cut-off date. Unlike new law inmates, old law prisoners can still secure early release through the parole system . . . . That old law inmates have early release avenues beyond compassionate release substantially undercuts King's position that application of § 4205(g) to pre-November 1, 1987, offenders is absurd such that the plain language of the statutory scheme that prescribes compassionate release procedures should not control.

*Id*. at 1231.

2022 Motion for compassionate release

In October of 2022, King filed a letter again requesting compassionate release, arguing that a recent Supreme Court decision permitted a different conclusion as to ability of pre-November 1, 1987, offenders to bring such motions on their own behalf. Dkt. No. 283. The order denying relief concluded the case on which King relied did not alter the prior analysis of this court and the Ninth Circuit. The order stated:

> the Court has no choice but to repeat its denial of compassionate relief. In doing so, however, we echo the urging for Congress to correct this "harsh and arguably unjust" situation: "it makes little sense to deny old law defendants the option of moving for compassionate release," as "[t]hese defendants are presumably older on average . . . and would seem to be more likely to need compassionate release"; and there is evidence that the FSA's sponsors believed that § 3582(c)(1)(A) compassionate release motions could be brought by new and old law defendants alike. [citation].

Dkt. 284.

2024 "Petition for reduction of time"

On December 31, 2024, King filed a "Petition for reduction of time." Dkt. No. 285. The filing was construed as yet another motion for compassionate release that the court still lacked jurisdiction to grant. Dkt. No. 289. The order, however, directed the U.S. Attorney to provide a copy of the order to the Bureau of Prisons ("BOP"), and requested the BOP to "to review King's circumstances and to consider whether it would be appropriate to file a motion seeking his release under 18 U.S.C. § 4205(g)." After that order issued, but apparently before King received it, he filed an "addendum." The addendum asserted that King had delayed in filing the "petition for reduction of time," because he wanted to come to the court with a clean conduct record. He had undergone a lengthy administrative appeal process, followed by a successful habeas petition in the Central District to clear his record and expunge an incident report that he contended unjustly and incorrectly indicated he had been in possession of contraband. No action was taken on the addendum as it did not alter the analysis.

"(BOP) Appeals Process" pleading

King next submitted a document entitled "(BOP) Appeals Process," with a caption identifying himself as the plaintiff and the BOP as the defendant.[3] The document includes several allegations of improper conduct by prison personnel. See, e.g. lines 77-85 (re: commands to drop to ground), and lines 92-98 (re: mail handling). It is unclear whether King intends to assert claims based on these allegations, or merely included them as informational background to his ongoing efforts to obtain compassionate release. King is hereby advised that if he wishes to pursue claims based on any allegations of mistreatment or violations of his civil rights by prison personnel, he must file a separate civil complaint; such claims cannot be pursued as part of this criminal case in which he is the defendant.

---

[3] For reasons that are not clear, the document was originally filed under seal and no Notice of Electronic Filing issued. Dkt. 291. The document was subsequently publicly filed on April 11, 2025. Dkt. 292.

    The document also includes allegations and exhibits that appear to be directed at obtaining further court review of his efforts to obtain compassionate release. Among the exhibits is a copy of what appears to be a denial by the warden of a request King made himself for the BOP to initiate a motion for compassionate release on his behalf. That request, and the warden's denial, appear to have been independent of the effort the U.S. attorney was directed to make to bring the court's concerns to the BOP for a full evaluation of King's circumstances, directed at reaching a just and equitable result. No further court action specifically addressed to the "(BOP) Appeals Process" pleading is warranted.

"Writs of Habeas Corpus"

    Subsequently, King has filed two documents in this case labeled as writs of habeas corpus. The first claims his federal sentence should have been running concurrently with his state sentence, again citing *United States v. Bell.* Dkt. No. 293. The second asserts an ineffective assistance of counsel claim, on the theory that King's attorney should have done more to ensure that the federal sentence would run concurrently with the state sentence. King also advances a second claim that he has not had a parole board hearing since he began serving his federal sentences, and that he is entitled to one. Dkt. No. 294.

Bureau of Prisons decision

    The government has informally provided the court with a copy of a decision dated April 14, 2025, by the warden of FCC Victorville denying a request, purportedly made by King, for a compassionate release. The decision asserts King asked for consideration of his past medical issues due to COVID, the potential for future health issues, his age, and the length of time he had already served. The decision gives no indication that it was made in response to the court's request, or that the warden was aware of, or took into consideration, any of the issues discussed in the court's order. Purporting to apply "guidance" found in BOP Policy Statement 5050.50, the warden concluded King was ineligible for compassionate release. Noting that at age 81 King

1  qualifies under the policy statement as an "elderly inmate" potentially eligible for release on that
2  basis alone, the warden found him to be disqualified because he has not served the greater of 10
3  years or 75% of the term imposed.

Discussion

In light of the foregoing, there appear to be two separate basic issues requiring further inquiry. First is the question of whether King's federal sentence should be deemed to have been running concurrently with his state sentence, under principles discussed in *United States v. Bell*, or otherwise. To be sure, *Bell* does not squarely hold that a federal sentence *must* run concurrently with a state sentence under circumstances like these. *See Bell*, 46 F.3d at 446 ("it is well established in this circuit that the district court retains the discretion to impose a sentence consecutively . . . ."). It is also not clear how the principles of *Bell*, which was decided when the Sentencing Guidelines were still understood to be mandatory, should be applied under the current understanding that they are not. Finally, in *Bell* the record was clear that the state and federal prosecutions were for "the same criminal conduct." *Id.* at 445. That has yet to be determined here. All that said, it appears the interests of justice would likely be well served by a finding that King's federal sentence must or may be deemed to have been running consecutively with his term of imprisonment on the state convictions.

The second basic issue is whether there is any basis to address further King's request for compassionate release. Several separate questions on that point will be set out below.

Order

Within twenty-one days of the date of this order, the government shall file a response addressing the following:

1. What does the record from the time of sentencing show, if anything, as to the sentencing judge's intent with respect to when the federal sentence would begin running? When King was transferred to federal custody, on what basis did the U.S. Attorney and/or the BOP

conclude that his sentence should *not* be deemed to have been running during the term of his state imprisonment?

2. King apparently was transferred to federal custody in 2019. His projected release date is February 12, 2050. Dkt. 274. That is a term of approximately 31 years. How was that calculated, given the federal sentence of 45 years?

3. Does the government concede that a release date in 2050 is functionally equivalent to a life sentence, given King's current age?

4. It appears that if the federal sentence were deemed to have been running during the approximately 38 years King spent in state confinement up to 2019, the 45 years federal term would expire as early as 2026. When does the government contend King would be eligible for release if the terms were deemed to be concurrent?

5. Under the applicable law and facts, should the federal term be deemed to have been running concurrently with the state term, or at a minimum, does the court have discretion to so rule?

6. In finding it not to be "absurd" to conclude "old law" prisoners are not eligible to file their own motions for compassionate release, the Ninth Circuit pointed to the general availability of the parole system as an alternative method by which "old law" prisoners may secure early release. As applied to the specific facts here, however, the statute appears to leave King without remedy, as his parole eligibility runs from the date of his transfer to federal custody, and does not take into account his prior 38 years of imprisonment. Is a different result warranted under this unique set of circumstances, which is unlikely to recur, and therefore not precedent setting?

7. The most recent extension of the "old law" regime applicable to prisoners whose offenses occurred before November 1, 1987, will expire later this year, unless Congress acts in the interim. What is the exact date the government understands the current extension will expire? If Congress fails to enact a further extension (however likely or unlikely that might be), does the government contend there would be any reason the court could not grant a compassionate release immediately thereafter?

8. Under what circumstances, if any, may the court review the decision of the warden not to pursue a motion for compassionate release?

9. The government may include such response to the procedural propriety or substance of the two "writs of habeas corpus" as it sees fit, including on the one issue outside the discussion above, namely King's claim that he is due a hearing before the parole board.[4]

**IT IS SO ORDERED**.

Dated: July 10, 2025

RICHARD SEEBORG
Chief United States District Judge

---

[4] Obviously, if King is eligible for, and granted, parole in the near future, the other issues become moot.