UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>DARREL KING,<br>　　　　　Defendant. | Case No. 81-cr-00311-RS-1<br><br>**ORDER GRANTING TEMPORARY EXTENSION OF DEADLINE FOR COMPASSIONATE RELEASE** |

On November 9, 2024, an order entered requiring the government to "initiate procedures to release [defendant] King from custody as soon as is practicable, but in no event later than November 14, 2025." The order further invited the government promptly to submit "a proposed order setting out any conditions for supervised release it may contend are appropriate." The deadline for King's release was set 10 days out so that the government could, if it chose, seek relief from the appellate court, or even this court, without the need for highly expedited consideration.

The government filed nothing until after 3:00 p.m. on the day before the deadline for King's release. The government then submitted an " Emergency Motion For A Stay Pending Appeal." The government advises that the Bureau of Prisons intends to comply with the November 9th order by releasing King on November 14, 2025, unless a stay issues by 3:00 p.m. The government further reports it has not determined whether it will appeal the November 9th order, and promises to advise the court and request the stay be lifted if it decides not to appeal.

As explained in the November 9th order, while it is clear that Congress never intended the "old law"—"new law" dichotomy to exist in perpetuity (see Dkt. No. 300, n. 6), it is less apparent what rules should be applied to "old law" inmates once Congress finally allowed the "old law" to expire, as it did effective October 31, 2025. In this legislative vacuum, and at least in the unique factual circumstances of this case, it is appropriate to look to the compassionate release standards set out in the "new law" of 18 U.S.C. § 3582(c)(1)(A) by analogy, even assuming that statute does not directly apply.[1]

That conclusion, rooted in fundamental fairness and justice, led to the further finding that King should be granted compassionate release at this point in time, at the age of at least 81, and having served the last 44 years in state or federal prisons. Again, the seriousness of King's crimes, both state and federal, cannot be understated or discounted. Although the State of California has concluded King has now served the appropriate amount of time for the state law crimes including the murder, he only began serving time for his related serious federal drug crimes six years ago. Nevertheless, as explained in the November 9th order, as well as in prior orders that declined compassionate release when the "old law" remained in effect, the extraordinary combination of circumstances here warrant relief, fully taking into account the 18 U.S.C.A. § 3553 factors.

Whether or not the government might prevail on appeal under a more restrictive view as to what relief is available or appropriate here, it has not shown that a stay pending appeal is warranted. The government asserts its interest, and that of the public, lies in "preventing a heroin-trafficking kingpin and murderer [from] reenter[ing] society in contravention of law." Again, however, the State of California, which obtained the murder conviction, has already concluded King has served the appropriate sentence for that crime, and that he was a suitable candidate for

---

[1] Cases, including a prior appellate decision in this action, that applied the general effective date of the Sentencing Reform Act of 1984 to conclude "old law" prisoners could not seek relief under 18 U.S.C. § 3582(c)(1)(A) were all decided when § 4205(g) was still in effect. It is not a forgone conclusion that the same legal analysis should continue to govern now that § 4205(g) has been completely repealed. Accordingly, 18 U.S.C. § 3582(c)(1)(A) may apply directly, rather than merely as a source of guidance, by analogy.

parole.[2] There is no basis to believe that King's prior drug crimes mean he remains a serious threat to public safety at this point in time.

The government also points to the risks it believes will arise if King is released without any form of ongoing supervision. The government asserts supervised release "does not appear to be authorized," because King is an old law prisoner. As the November 9th order indicated, however, the court will entertain a proposed order from the government setting out any conditions for supervised release it may contend are appropriate. Assuming reasonable conditions are requested, they will be imposed.[3]

Accordingly, while a stay pending appeal will not be granted, the deadline for King's release will be extended until Thursday, November 20, 2025, at 3:00 p.m. The government is encouraged to submit any proposed order for conditions of supervised release as soon as possible, to allow sufficient time for it to be considered and acted on in advance of the release deadline.

**IT IS SO ORDERED**.

Dated: November 14, 2025

RICHARD SEEBORG
Chief United States District Judge

---

[2] While the state may have known King would be released from state prison directly into the custody of federal law enforcement personnel, it is not reasonable to assume that state officials would rely on the existence of the federal sentence to protect the state's citizens if they had reason to believe King still posed a significant risk to public safety.

[3] It seems unlikely King could prevail on any argument that release conditions cannot be imposed in these circumstances without the appellate court further concluding that compassionate release was likewise not available to him in the first instance.